UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10581-RGS

HERBY CAILLOT,

v.

VERONICA MADDEN,

MEMORANDUM AND ORDER
ON THE REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE

January 26, 2016

STEARNS, D.J.

While I agree with much of Magistrate Judge Kelley's exhaustive Report & Recommendation (R&R), I disagree with her conclusion that the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), expanded, rather than extended, the Sixth Amendment protections of *Bruton v. United States*, 391 U.S. 123 (1968). Rather, I agree with the Supreme Judicial Court (SJC) that, if there was error in the trial court's admission of the codefendant's (false) exculpatory statement, the error was harmless beyond any reasonable doubt.[1]  Consequently, the Magistrate

---

[1] A federal court, in reviewing the decision of a state court, may grant habeas relief only where the state court decision is contrary to, or involves an unreasonable application of clearly established Supreme Court law, or an

Judge's Recommendation is <u>ADOPTED</u> in part.[2]

The pertinent facts, as related by the Supreme Judicial Court, are not in dispute. Late in the day on November 19, 1996, shooting erupted on Warren Avenue in Brockton, leaving Carlo Clermy dead. Officer Thomas Spillane was dispatched from the scene of the shooting to Good Samaritan Hospital in Brockton where he observed a green Chrysler Cirrus parked outside the Emergency Room with its driver's side windows missing. In the Emergency Room, he encountered the codefendant, Manuel Santos, who acknowledged being the driver of the Cirrus. Santos claimed that he and the Petitioner, Herby Caillot, had been victims of an attempted highjacking while they were driving south on Main Street in Brockton. Shots were fired, and Caillot, who was riding in the back seat, suffered a bullet wound to his hand. When Santos was interviewed later (at his request) by Detective Arthur McLaren, he repeated the story of an attempted highjacking (although now relocating the shooting to Warren Avenue). When asked by

---

unreasonable determination of facts in light of the evidence presented in the state proceeding. 28 U.S. C. § 2254(d).

[2] I have considered the Respondent's objections to aspects of the Magistrate Judge's R&R, and the two memoranda submitted on behalf of Petitioner urging adoption of the Recommendation that the petition be granted.

McLaren if he knew the identity of the shooter, Santos stated that it was the same person (Clermy) who had killed Caillot's first cousin, Steven Auguste, three months earlier.

Caillot, who was also interviewed at the Emergency Room by Officer Spillane, told an identical story of a foiled highjacking. He explained that while lying in the back seat of the Cirrus, he had heard shots, and after putting his hand in the air, suffered the gunshot wound to his hand.

Caillot and Santos were tried together as joint venturers for the murder of Clermy.[3] The statements of both men were offered by the

---

[3] *Bruton* did not disturb the common-law rule admitting statements made by coventurers during the course of and in furtherance of a joint enterprise or conspiracy. *See Bruton,* 391 U.S. at 128 n.3; *Bourjaily v. United States*, 483 U.S. 171, 181-184 (1987); *Crawford*, 541 U.S. at 55. The statements of Santos and Caillot, however, were not admitted as having been made in furtherance of the joint venture because the trial judge did not make the necessary preliminary findings, *Commonwealth v. Caillot,* 454 Mass. 245, 257 n.8 (2009) *(Caillot II)*, although they might well have been so admitted. *See Commonwealth v. Angiulo*, 415 Mass. 502, 519 (1993) ("Efforts on the part of a joint venturer to conceal the occurrence of the enterprise's unlawful purpose or to effect an escape warrant the inference that the joint venture continued through the time the statements were made."). The Magistrate Judge also thought it of significance that the jury on its verdict slip did not make a formal finding of a joint venture. Joint venture, however, is a theory of culpability, and not a freestanding crime or an element of a crime. Consequently, the Commonwealth is not required to prove beyond a reasonable doubt that another person in fact participated in the venture. *Commonwealth v. Horne*, 466 Mass. 440, 446 (2013).

Commonwealth to demonstrate that they had contrived a false exculpatory explanation for Caillot's gunshot wound and for the damage to Santos' car.[4] The statements were admitted without any limiting instruction by the trial judge.[5]

In analyzing Caillot's claim of a violation of his Sixth Amendment right of confrontation, the Magistrate Judge first turned to the holding of *Bruton*. In *Bruton*, the Supreme Court held that the admission at a joint trial of a non-testifying accomplice's extrajudicial confession "powerfully" incriminating a fellow defendant violates the right of confrontation. *Id.,* 391 U.S. at 135. Moreover, admission of an unredacted statement poses too great a risk to "the practical and human limitations of the jury system" to be cured by a limiting instruction. *Id.* at 136. But, as the Magistrate Judge

---

[4] The aspects of the statements that were true, that Santos was the driver of the car in which Caillot was riding as a passenger, and that Caillot had suffered a bullet wound to his hand, were not matters of dispute at trial.

[5] As the SJC ultimately found any error in the admission of Santos' statement to be harmless beyond a reasonable doubt, it did not resolve the issue of whether Caillot's counsel had properly preserved the issue for appeal. *Caillot II*, 454 Mass. at 257 n.8. The SJC pointed out that Caillot's counsel did not seek a limiting instruction at trial and that counsel for both Santos and Caillot urged the jury to accept the defendants' mutually corroborative exculpatory statements as true. *Id.* at 256.

4

acknowledged, *Bruton* applies only when the statement of the nontestifying codefendant *directly* incriminates the defendant.  R&R at 19.  Recognizing that nothing in Santos' statement was "directly inculpatory" of Caillot, she correctly concluded that the SJC had properly rejected Caillot's *Bruton* claim.  *Id.* at 27.

The Magistrate Judge then turned to the Supreme Court's holding in *Crawford*.  The *Crawford* decision essentially extended the principles of *Bruton* to the testimonial statements of *all* nontestifying witnesses when they are offered as probative of a defendant's guilt.  541 U.S. at 49-50.[6]  The Magistrate Judge noted *Crawford's* admonition that "the Confrontation Clause is not implicated when statements are offered 'for purposes other than establishing the truth of the matter asserted.'" *Id.* at 60 n.9.[7]  However, she concluded that the SJC had misapplied *Crawford* by treating the admission of Santos' self-exculpatory statement as simply a matter of

---

[6] When a testimonial statement, no matter how "reliable," is offered for the truth of the matter asserted, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68.  Although the definition of a testimonial statement for *Crawford* purposes is still evolving, there is no dispute that Santos' statement was testimonial within the meaning of *Crawford*.

[7] *See also* Michigan *v. Bryant*, 562 U.S. 344, 367 n.11 (2011).

hearsay governed by state evidentiary law.  R&R at 32.  In faulting the SJC in this regard, the Magistrate Judge determined that the First Circuit has interpreted *Crawford* as adding an extra layer of inquiry into a potential *Bruton* violation.[8]  R&R at 27-28.  As the Magistrate Judge reasoned, "[t]he critical question is not whether a state or evidentiary rule classifies a statement as hearsay but whether the statement requires confrontation

---

[8] Whether this is true or not, First Circuit precedent is not "clearly established" Supreme Court law.  *See* 28 U.S.C. § 2254(d)(1).  Moreover, the First Circuit cases the Magistrate Judge cites in support of her view that *Crawford* broadens rather than extends the confrontation right recognized in *Bruton* do not appear on point.  In *Santiago v. O'Brien*, 628 F.3d 30, 33-34 (1st Cir. 2010), Judge Boudin, after noting that errors of state law do not ordinarily trigger habeas review, stated that an otherwise correct state evidentiary ruling nonetheless may rise to constitutional error where a state court admits against a defendant "certain kinds of *inculpating* hearsay statements." *Id.* at 33 (emphasis added).  *Santiago*, however, involved an issue the reverse of here, namely, "the exclusion under state law of exculpatory hearsay that a defendant wants admitted." *Id.* at 34.  The second case, *United States v. Cruz-Diaz*, 550 F.3d 169 (1st Cir. 2008), seems even less on point.  In *Cruz-Diaz*, the trial court admitted the statement of a codefendant who made an inculpatory statement to an FBI agent regarding the weapons and money that had figured in a bank robbery.  The First Circuit rejected a *Crawford* challenge, noting that "the statement was not offered for its truth – that is, to prove that the money was in the bag, that they were 'screwed' or even that the defendants were the true culprits – but rather to explain why the FBI and police did not pursue other investigatory options after apprehending the defendants."  *Id.* at 176.  As the Court observed, even when a statement is testimonial, it may be admitted under *Crawford* where the "the statement is not hearsay in that it is being admitted for a purpose other than establishing the truth of the matter asserted." *Id.*

6

because the credibility of the speaker has bearing on the probative value of the evidence [because of possible 'linkage']."  R&R at 22.  In the Magistrate Judge's view, the SJC erred by "blindly applying a 'non-hearsay' label to Santos' statements in violation of *Crawford's* holding," R&R at 34, and then compounded that error by "ignor[ing] the clearly established rule" of *Gray v. Maryland*, 523 U.S. 185 (1987), that "'without limiting instructions,' admission of [a] redacted statement of [a] codefendant that only incriminates when linked with other evidence in the case '*would have violated the defendant's Sixth Amendment rights.*'"  R&R at 35.

There are, as I see it, several flaws in the Magistrate Judge's reasoning.  In the first instance, it is excruciatingly difficult to attach the label of "unreasonable misapplication" of fact or law to the SJC's determination that Santos' false exculpatory statement was offered by the Commonwealth for a purpose other than its truth, that is, as evidence of Santos' state of mind.  *Caillot II*, 454 Mass. at 256.[9]  Indeed, it is virtually impossible to imagine any scenario in which the Commonwealth would have offered the statement

---

[9] In this regard, the SJC cited *Tennessee v. Street*, 471 U.S. 409, 413-414 (1985), where the Supreme Court found no *Bruton* error in the admission of an accomplice's statement offered, not for its truth, but to rebut the defendant's untruthful testimony that he had been coerced into repeating the accomplice's confession.

for any truthful purpose. The Commonwealth was seeking to prove that Santos and Caillot had been involved in a murder and, when on the verge of being caught, concocted a fable to account for the bullet wound to Caillot's hand and the shattered glass in Santos' vehicle. *Id.* The Commonwealth was not attempting to prove that Caillot and Santos were in fact innocent victims of an attempted highjacking and would have had no conceivable reason for wanting to do so.

In the second instance, I believe that the Magistrate Judge incorrectly applied a rule developed by the Supreme Court as a prophylactic measure against the prejudicial spillover that can occur when an otherwise incriminating confession of a nontestifying codefendant is redacted to eliminate any direct reference to a defendant. *See Richardson v. Marsh*, 481 U.S. 200 (1987); *Gray v. Maryland*, 523 U.S. 185 (1987). Responding to a suggestion in *Bruton*, 391 U.S. at 134 n.10, the Court in *Richardson* held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 211. In so holding, the *Richardson* Court rejected the "contextual implication" doctrine

under which some courts had found a *Bruton* error where a confession which was not incriminating on its face became so when linked with other evidence introduced at trial. *See id.* at 206, 208. Where there is a danger of linkage, "the judge's [limiting] instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place." *Id.* To the extent there was any undesirable "linkage" at all in Santos' statement,[10] the failure of the trial judge to give a limiting instruction *sua sponte*, if it was error, is of the kind (as the SJC held) to be addressed by harmless error analysis and not as a structural defect requiring automatic reversal.[11]

---

[10] Santos' statement was not redacted so the source of any potential linkage was not the faulty editing that concerned the Court in *Gray*. Rather, the "linkage" that concerned the Magistrate Judge is the possibility that the jury, while disbelieving Santos' (and Caillot's) story about an attempted highjacking, might have credited Santos' statement that the murder victim had three months earlier murdered Caillot's cousin. If so, they might have imputed that knowledge to Caillot, thus giving him a motive (revenge) for the killing of the victim (Clermy). (According to the trial judge, there was no evidence before the jury that either Caillot or Santos in fact knew Clermy). *See* R&R at 31, 34 n.13.

[11] I have difficulty envisioning a limiting instruction that the trial court could have given that would not have prejudiced Caillot by planting the suggestion of a revenge motive in the jurors' minds, while at the same time implying that the defendants' mutually corroborative story of a supposed highjacking was not to be believed. As noted, the trial judge in referencing the attorney's closing arguments instructed the jury to disregard any "element of motive." R&R at 34 n.13; *see also Commonwealth v. Caillot,*

9

Let me stress that the issue is not whether the Supreme Court might not at some point construe *Crawford* and *Street* as expanding on *Bruton* to require a limiting instruction whenever the statement of a codefendant, facially incriminating or not, is offered at a joint trial for any purpose. But this is not, to my mind, presently "clearly established" Supreme Court law, and I cannot say that the SJC acted unreasonably in thinking the same. Nor can I say that the SJC acted unreasonably in subjecting the elements of Santos' statement that might have been taken for their truth to a harmless error analysis. S*ee Brown v. United States*, 411 U.S. 223, 231 (1973) (applying the harmless error doctrine in reviewing *Bruton* violations where testimony erroneously admitted was cumulative and largely uncontroverted). As the SJC observed, what the jury may have considered for its truth in Santos' statement (that Caillot was in the Cirrus with Santos when he was shot), Caillot had admitted, or it was otherwise known to the jury from other competent testimony (that Caillot's cousin had recently been murdered). *Caillot II*, 454 Mass. at 256-257.[12]

---

449 Mass. 712, 719-721 (2007) (*Calliot I*).

[12] As the Magistrate Judge accurately noted, "there was strong evidence against Caillot." R&R at 46. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). As this court finds no unreasonable application of fact

ORDER

For the foregoing reasons, the Recommendation is ADOPTED in part and DECLINED in part.  The petition is DISMISSED with prejudice. Given my respect for the Magistrate Judge's differing opinion on a matter of a substantial constitutional right, I will approve a request for a properly framed Certificate of Appealability, if filed within fourteen (14) days of the date of this decision.  See 28 U.S.C. § 2253.  The Clerk is instructed to enter an Order of Dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

or law by the SJC in its rejection of a *Bruton* or *Crawford* violation in the trial court's admission of Santos' statement, there is no reason for further discussion of the alleged misuse of the statement by the prosecutor in his closing argument.   R&R at 73-74.